Geraldine CARIUS, Plaintiff,

v.

NEW YORK LIFE INSURANCE COMPANY, a corporation, Defendant.

No. P–1313.

United States District Court, S. D. Illinois, N. D.

Oct. 6, 1954.

389

ADAIR, District Judge.

This cause having been tried before the Court without a jury upon the pleadings and the Court having examined the stipulation of facts and the evidence produced by the parties hereby makes the following findings of fact:

1. This is a civil action between citizens of different states and the amount in controversy exceeds the value of $3,000, exclusive of interest and costs.

2. Under effective date of May 29, 1946, the defendant issued to Marvin W. Carius a policy of life insurance which insured his life for $10,000 on the ordinary life plan with double indemnity provisions, and with his father, Henry C. Carius, designated the beneficiary for $2,000, and his wife, Geraldine Carius, the designated beneficiary for the balance.

3. The annual premium for the policy was $229.80 and included an annual premium of $11.40 for the double indemnity provision by which the defendant agreed to pay the beneficiary, in addition to the single indemnity, the further sum of $10,000:

"* * * upon receipt of due proof that the death of the insured resulted directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means * * *; provided, however, that such Double Indemnity Benefit shall not be payable if the insured's death resulted from * * * war or any act incident thereto".

4. Said double indemnity was contained in the body of the policy and there were no additional provisions relating to war attached to the policy.

5. Insured, Marvin W. Carius, was a member of the 24th Medical Battalion of the Armed Forces of the United States of America on and for several months prior to December 9, 1950, and at that time held the rank of Major in the Dental Corps of said Armed Services. On December 9, 1950, Major Carius was in the enemy territory of North Korea on active duty as a part of the United

Willard B. Gaskins, Robert A. Wilhelm, Peoria, Ill., for plaintiff.

Lewis Bond, Peoria, Ill., MacLeish, Spray, Price & Underwood, Wendell Brown, Chicago, Ill., for defendant.

States Armed Forces there. At that time and place, Major Carius was killed in action. Death resulted from multiple gunshot wounds of head and chest, when a convoy, a part of the 24th Medical Battalion of which he was a member, was attacked and ambushed by North Korean enemy. Other battle casualties in the ambush were, 2 officers killed, 7 enlisted men killed, 1 officer wounded and 16 enlisted men wounded. The convoy was in enemy territory when the attack and ambush occurred.

6. The invasion by armed attack by the North Koreans into the Republic of Korea at its northermost boundary occurred on June 25, 1950. Thereupon under dates of June 25, 1950 and June 27, 1950, resolutions were adopted by the Security Council of the United Nations which called upon its members to render assistance to the Republic of Korea to repel the attack, and on June 27, 1950, the President of the United States ordered our air and sea forces to give troops of the invaded country cover and support.

7. From June 25, 1950 to July 31, 1950, aided by U. S. planes and naval craft, the ROKs fought an action which resulted in a forced withdrawal to the Pusan perimeter in the extreme south.

8. In the meantime, other major United States units, the 1st Cavalry Division (Infantry), the 24th Division, with which Major Carius was connected, and the 7th Infantry Division, were transported from Japan.

9. From September 15, 1950 to November 24, 1950, the South Korean and United Nations forces engaged the enemy by a counter-offensive which took the 24th Division, of which Major Carius was a part, into enemy territory. The 24th Medical Battalion was bivouaced there on December 9, 1950.

10. On November 24, 1950, the Korean War entered a new phase when Chinese Communists came to the aid of the North Koreans. Two huge Chinese armies drove down from the north and the ROKs with their allies, designated the 8th Army, were forced to retreat from enemy territory to the environs of the 38th parallel or northern border of the Republic of South Korea.

11. The various army reports show that Major Carius was a battle casualty, killed in action on December 9, 1950 of multiple gunshot wounds, head and chest, in enemy territory in an attack and ambush by guerrilla forces of the enemy North Koreans.

12. Official reports of the Department of Defense show that our battle casualties in Korea for the period through midnight, December 8, 1950, were 33,878. During the next week, the period in which Major Carius was killed in action, the total battle casualties increased to 36,421.

13. The official report of the death of Major Carius states that he was a "battle casualty" and was "killed in action". Under Army regulations, such designation is used to show that insured died from engagement with the enemy.

14. By numerous acts, Congress has recognized the existence of war in Korea by large appropriations to support our Armed Forces there, and other enactments.

15. Specifically, the Court refers to transfer of equipment, materials and services to Korea, 22 U.S.C.A. § 1580, aid to Korea, 22 U.S.C.A. §§ 1551, 1552, 1703, military assistance to Korea, 22 U.S.C.A. §§ 1602, 1603, temporary extension of statutes punishing espionage, etc. 18 U.S.C.A. §§ 798, 2157, 2391.

16. Also, the Court takes judicial notice of the passage by Congress of the Servicemen's Indemnity Act, which provides $10,000 free insurance to all servicemen killed in action after June 27, 1950, Title 38 U.S.C.A. §§ 851–858; the Combat Duty Pay Act increasing the pay of all servicemen in Korea combat zone since 1950, 50 U.S.C.A.Appendix, §§ 2351 and 2353; tax exemption for military forces in combat zone in Korea after June, 1950, 26 U.S.C.A. § 22(b) (13); disability and pension rights to Korean War veterans, 38 C.F.R. 1, Vet.Adm., para. 3–1511; free postage in Korean combat zone for Army per-

sonnel, 50 U.S.C.A.Appendix, § 891; rent control for Korean War veterans, 50 U.S.C.A.Appendix, § 1884; industrial aid to Korean veterans, 22 U.S.C.A. § 1547; automobiles for disabled Korean War veterans, 38 U.S.C.A. §§ 252a–252e; housing preference for Korean veterans, 12 U.S.C.A. § 1715e; 42 U.S.C.A. §§ 1575, 1581.

17. By executive order, the President has declared the date of commencement of combatant activities to be June 27, 1950, and designated Korea and waters adjacent thereto to be a combat zone, 15 Fed.Reg. 177.

18. Also, by executive order, the President has established the Bronze Star Medal for award to any person who, while serving in or with the Armed Forces of the United States, distinguished himself by services or meritorious achievement or service in connection with military or naval operations against the enemy of the United States, 9 Fed.Reg. 1495, and such award was made to Major Carius posthumously for his meritorious service in Korea during the period from July 2, 1950 and preceding the date he was killed in action there.

19. On July 27, 1953, an armistice agreement was executed between the Commander-in-Chief, United Nations Command, on the one hand, and the Supreme Commander of the Korean People's Army and the Commander of the Chinese People's Volunteers, on the other hand, which established (1) demilitarized zones (2) concrete arrangements for cease-fire and armistice and (3) arrangements with relation to exchange of prisoners of war.

20. On August 19, 1953, the Department of Defense issued a report on U. S. casualties killed, wounded and missing in action in the Korean area to be a total of 139,834, of whom 25,604 were killed in action, 103,492 wounded in action, and 10,748 missing or captured in action.

21. Based on Department of Defense figures, the Court takes judicial notice of the fact that the total casualties in the Korean War are over three million, with total casualties in the ROK and UN side of 1,474,259. At the time the Korean armistice was executed the Secretary of State issued a statement in which he stated that "The Chinese and Korean Communist armies have sustained about 2 million casualties and of the 10,000,000 people of North Korea, one out of every three has died from the war ravages."

22. On December 9, 1950, there was war in Korea; this nation actually and technically was a part of that war, and was arraigned on the side of the free nations.

23. The death of Major Carius occurred on December 9, 1950, in North Korea from multiple gunshot wounds to the head and chest, suffered in actual combat during the retreat of Republic of Korea and its allied forces when the United States army convoy of which Major Carius was a party was attacked in enemy territory by enemy forces, which consisted of North Korean guerillas. Major Carius, found with a .45 revolver in his hand in a ditch near his army jeep, was killed in action in the battle which ensued at said time and place.

24. The Company, by deletion of a printed phrase which referred to additional conditions attached to the policy, did not waive the restriction contained in the body of the policy itself, which restricted its liability for fatal accidents to those which did not result from "war or any act incident thereto."

Inasmuch as the defendant has paid the full amount of the single indemnity or ordinary life coverage of $10,203.63 under the policy sued upon, it has discharged its liability thereunder.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter.

2. Under the terms of the policy contained in the body of the policy itself, the defendant's promise to pay the additional $10,000 of double indemnity was to pay said sum upon receipt of due proof that:

"the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means \* \* \*; provided, however, that said double indemnity benefit shall not be payable if the insured's death resulted from \* \* \* war or any act incident thereto"

which said coverage clause was not waived by deletion of a reference to additional war conditions contained in an attachment to the policy.

3. The applicable rule of construction is that the words used in an insurance contract shall be interpreted in accordance with their plain, ordinary and popular sense.

4. Application of the facts of this case to the war clause causes the Court to conclude and determine that the death of Major Carius on December 9, 1950, from multiple gunshot wounds to the head and chest, suffered in actual combat during the retreat of United States forces in North Korea when the United States Army convoy of which Major Carius was a part was attacked in the enemy territory of North Korea by enemy forces which consisted of North Korean guerillas, found on the same day at the scene of battle with a .45 revolver in his hand, lying in a ditch near his army jeep and officially reported by the Army as a battle casualty killed in action which ensued at said time and place, in the plain, ordinary and popular sense of the words used in the double indemnity coverage clause contained in the body of the policy sued upon, was a death which resulted from war or an act incident to war.

5. Defendant has fully discharged its liability under the policy sued upon by payment of the single indemnity or ordinary life coverage thereunder, and, accordingly, judgment should be rendered herein for the defendant.

#### Final Judgment

In accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby ordered, adjudged and decreed, that judgment be, and the same hereby is, entered for the defendant; that plaintiff have and recover nothing by her suit; and that defendant, New York Life Insurance Company, go hence without day.